**In re Richard W.T. SMITH, d/b/a Wholesale Carpet & Tile Warehouse, Debtor.**

**PEOPLE of the State of Illinois, ex rel. Tyrone C. FAHNER, Attorney General of Illinois, Plaintiff,**

**v.**

**Richard W.T. SMITH, d/b/a Wholesale Carpet & Tile Warehouse, Defendant.**

**Bankruptcy No. 82 B 4840.**
**Adv. No. 82 A 2237.**

United States Bankruptcy Court, N.D. Illinois, E.D.

March 5, 1984.

Peter W. Snyder, Asst. Atty. Gen., Chicago, Ill., Consumer Protection Division, for the People of the State of Ill.

Donald H. Geiger, Waukegan, Ill., for debtor.

ORDER

LAWRENCE FISHER, Bankruptcy Judge.

This matter coming on to be heard upon the Complaint filed by PEOPLE OF THE STATE OF ILLINOIS, ex rel. TYRONE C. FAHNER, Attorney General of Illinois, for a judgment ordering restitution and imposing a civil penalty pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act and for a determination that Debtor's obligations to certain named consumers and for the civil penalty requested are nondischargeable pursuant to § 523(a)(2) and (7) of the Bankruptcy Code,

and upon Debtor's Motion to Strike and Dismiss the Complaint, and

The Court having examined the pleadings filed in this matter, and having reviewed the Memorandum of Law filed by Plaintiff in support of its position, and having heard the arguments of counsel, and the Court being fully advised in the premises;

The Court Finds:

1. On April 12, 1982, RICHARD W.T. SMITH, d/b/a WHOLESALE CARPET & TILE WAREHOUSE, filed his voluntary petition for relief under chapter 7 of the Bankruptcy Code.

2. Thereafter, on June 18, 1982, the Attorney General of Illinois filed the instant Complaint seeking, *inter alia*, a judgment of restitution pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Consumer Fraud Act"), Ill. Rev.Stat. ch. 121½, ¶ 261 *et seq.*, the relevant portions of which provide as follows:

> 262. Unlawful practices—Construction with Federal Trade Commission Act
>
> § 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.
>
> .    .    .    .    .
>
> 267. Injunctive and other relief

> § 7. Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by Sections 2 through 2–0 of this Act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the State against such person to restrain by temporary or permanent injunction the use of such method, act or practice. The Court, in its discretion, may exercise all powers necessary, including but not limited to: injunction; revocation, forfeiture or suspension of any license, charter, franchise, certificate or other evidence of authority of any person to do business in this State; appointment of a receiver; dissolution of domestic corporations or association suspension or termination of the right of foreign corporations or associations to do business in this State; and restitution.
>
> In addition to the remedies provided herein, the Attorney General may request and this Court has authority to impose a civil penalty in a sum not to exceed $50,000 against any person found by the Court to have engaged in any method, act or practice declared unlawful under Section 2 of this Act. .

In his Complaint, Plaintiff alleges that Debtor, in connection with the sale of carpeting, tile, wallpaper, and other merchandise to Illinois consumers, engaged in a course of conduct violative of the Consumer Fraud Act. According to the Complaint, Plaintiff has received formal written complaints from named consumers who allegedly made payments to Debtor, totaling $9,578.81 and ranging in amount from $35.68 to $3,500.00, in reliance upon Debtor's promises to deliver carpeting, tile, and/or wallpaper. Plaintiff states that in each instance, Debtor knew he would be unable to deliver the merchandise ordered and in fact never made the deliveries or returned the moneys paid. Plaintiff seeks a judgment ordering restitution on behalf of the sixteen named consumers and imposing a civil penalty in the amount of $50,-000.00 pursuant to the above-quoted provisions. Plaintiff further prays for a deter-

mination that Debtor's obligations to the named consumers and for the civil penalty requested are nondischargeable pursuant to subsections (2)(A) and (7), respectively, of § 523(a) of the Bankruptcy Code. § 523(a) provides in relevant part as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt___

. . . . . .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by___

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

. . . . .

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . .

3. Debtor has moved to dismiss the Complaint upon the ground that Plaintiff is not a party entitled to seek the determinations of dischargeability prayed for herein. Debtor further contends that the Complaint fails to allege at what point in time Debtor became aware of his inability to make the promised deliveries or whether the reason for non-delivery was within Debtor's control. Finally, Debtor seeks dismissal of that portion of the Complaint concerning the imposition of a civil penalty pursuant to ¶ 267 quoted above.

The Court Concludes and Further Finds:

1. The debtor or any creditor may file a complaint to determine the dischargeability of a debt. Bankruptcy Rule 409(a)(1).[1] Plaintiff is clearly a creditor of Debtor with respect to any penalty which this Court might impose pursuant to ¶ 267 of the Consumer Fraud Act. § 101 of the Bankrupt-

cy Code provides in relevant part as follows:

In this title___

. . . . .

(4) "claim" means___

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; . . .

. . . . .

(9) "creditor" means___

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor . . .

The fact that Debtor's liability for civil penalties under the Consumer Fraud Act is, and was at the time the petition was filed herein, contingent and unliquidated does not affect the status of that obligation as a claim in these proceedings.

2. Plaintiff is also a creditor with respect to Debtor's obligations to the consumers named in Plaintiff's Complaint.

In *Nathanson v. NLRB*, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952), the Court held that the National Labor Relations Board was a creditor of the debtor in the amount of a back pay award entered on behalf of injured employees. The *Nathanson* Court reasoned as follows:

" . . . The Board is the public agent chosen by Congress to enforce the National Labor Relations Act . . . . A back pay order is a reparation order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice. . . . Congress has made the Board the only party entitled to enforce the Act. A back pay order is a command to pay an amount owed the Board as agent for the injured employees. The Board is therefore a claimant in the amount of the back pay."

**1.** The former Bankruptcy Rules are applicable to this adversary proceeding, filed June 18, 1982.

*Id.* at 27, 73 S.Ct. at 82 (citations omitted).[2] *See NLRB v. Killoren,* 122 F.2d 609 (8th Cir.1941). *See also State ex rel. Nilsen v. Bean,* 218 Or. 506, 346 P.2d 652 (1959).

Relying on the above-cited cases, the court in *Degnan v. Ackerman (In re Ackerman),* No. B–79–01697 (Bankr.D.N.J. March 3, 1980), held that the Attorney General of New Jersey had standing to prosecute a complaint to determine the dischargeability of debts owed to consumers allegedly defrauded in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1 *et seq.* The court stated:

> ... There can be no doubt that the Plaintiff has express statutory authority to seek and obtain a judgment on the basis of certain practices declared to be unlawful by the Consumer Fraud Act, N.J.S.A. 56:8–1 *et seq.* It is equally clear that while the Plaintiff acts in a purely representative capacity with respect to the procurement of a judgment for restitution, plaintiff is a proper or real party in interest insofar as the prosecution of a consumer fraud action is concerned....

A similar result was reached in *Kansas ex rel. Miller v. Bradbury (In re Bradbury),* 16 Collier Bankr.Cas. (MB) 544 (Bankr.D.Kan. March 1, 1978), where the district attorney brought an action to determine the dischargeability of a debt evidenced by a consent judgment entered pursuant to the Kansas Consumer Protection Act, K.S.A. § 50–623 *et seq.* The court indicated that the legislature had specifically authorized the district attorneys of that State to represent consumers in actions to recover damages under the statute. By virtue of the statute, the district attorney in *Bradbury* had become the agent or proxy of the consumers and a creditor in the bankruptcy proceedings. The court stated, "To deny the State the right of a creditor would restrict its ability to enforce the Kansas Consumer Protection Act and would appear to be contrary to legislative intent." *Id.* at 547.

The Illinois legislature, through enactment of the Consumer Fraud Act, has likewise authorized the Attorney General to represent and act on behalf of consumers victimized by practices declared unlawful under that Act. To deny the Attorney General the right to prosecute a complaint to determine the dischargeability of debts owed to such consumers would unduly hinder enforcement of the Consumer Fraud Act and would be contrary to legislative intent.

3. Debtor's further contentions concerning the sufficiency of Plaintiff's allegations to state a cause of action pursuant to § 523(a)(2)(A) of the Bankruptcy Code are without merit.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Debtor's Motion to Strike and Dismiss the Complaint filed herein by PEOPLE OF THE STATE OF ILLINOIS ex rel. TYRONE C. FAHNER, Attorney General of Illinois, be, and the same is hereby denied.

IT IS FURTHER ORDERED that Debtor file his Answer to the Complaint on or before May 15, 1984.

IT IS FURTHER ORDERED that trial upon the Complaint and Debtor's Answer thereto be, and the same is hereby set for May 25, 1984, at the hour of 1:30 p.m., Courtroom C–101, Lake County Courthouse, 18 North County Street, Waukegan, Illinois.

---

**2.** Unlike the Board in *Nathanson,* the Attorney General of Illinois is not the only party entitled to enforce the Consumer Fraud Act. Under the circumstances, the Court finds this distinction to be without significance.